# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                No. 00-1366

ROBERT MITCHELL, III,

    Defendant-Appellant.


UNITED STATES OF AMERICA,

    Plaintiff-Appellee

v.                                No. 00-1520

LAWRENCE JOHN SPOSATO,

    Defendant-Appellant.


UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                No. 00-1521

RICHARD ANDRADA,

    Defendant-Appellant.

ORDER

Filed December 11, 2001

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ANDERSON**, Senior Circuit Judge.

The order and judgment dated October 23, 2001, shall be published. A copy of the published opinion is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court

by:
Jane B. Howell
Chief Deputy Clerk

2

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT MITCHELL, III,

    Defendant-Appellant.

No. 00-1366

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LAWRENCE JOHN SPOSATO,

    Defendant-Appellant.

No. 00-1520

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RICHARD ANDRADA,

    Defendant-Appellant.

No. 00-1521

Barry A. Schwartz, of the Law Office of John Henry Schlie and Barry A. Schwartz, P.C., Denver, Colorado, for Defendant - Appellant Robert Mitchell, III.

Walter L. Gerash of Walter Gerash Law Firm, Denver, Colorado, for Defendant - Appellant Lawrence John Sposato.

E. Richard Toray of Gerash, Prugh & Gerash, L.L.C., Denver, Colorado, for Defendant - Appellant Richard Andrada.

James C. Murphy, Assistant United States Attorney (Richard T. Spriggs, United States Attorney and H. Wayne Campbell, Assistant United States Attorney, with him on the brief) Denver, Colorado, for the Plaintiff - Appellee.

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ANDERSON**, Senior Circuit Judge.

**McWILLIAMS,** Senior Circuit Judge.

On July 15, 1999, an indictment was filed in the United States District Court for the District of Colorado naming Robert Mitchell, III ("Mitchell"), Lawrence John Sposato ("Sposato"), Richard Andrada ("Andrada") and six others as defendants (we are not here concerned with the other defendants). In Count 1, all defendants were charged with conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. In Count 2, Mitchell was

charged with possession of a controlled substance with an intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). In Count 3, Mitchell was charged with using a telephone in facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). In Count 7, Sposato was charged with using a telephone in facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). In Count 11, Andrada was charged with using a telephone in facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). In Count 12, Andrada was charged with possessing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

On February 18, 2000, Sposato filed a motion to suppress the use at trial of evidence obtained by means of three wiretaps, which taps will be referred to as WT-5, WT-6, and the extension order of WT-6. Thereafter Andrada, Mitchell, and others filed similar motions to suppress, with some defendants joining in the motion to suppress filed by other defendants.

On May 5, 2000, the district court held a hearing on all motions to suppress, at which time FBI Special Agent Andrew Guthrie was examined briefly upon direct examination, but cross-examined at considerable length by various defense counsel. It was Agent Guthrie's affidavits which formed the basis for WT-5, which was issued on May 20, 1998, WT-6, which was issued on July 1, 1998, and the extension order of WT-6 issued on July 31, 1998. On May 26,

2000, Judge Daniel B. Sparr in a 26-page memorandum and order denied all motions to suppress.

On June 27, 2000, Mitchell entered into a plea agreement with the United States whereby he was allowed to enter a plea of guilty to Count 3 of the indictment, namely the unlawful use of a communication facility, and the government, in turn, withdrew the other charges against Mitchell, namely Counts 1 and 2. Mitchell's plea of guilty was conditional and entered pursuant to Fed.R.Crim.P. 11(a)(2). On September 6, 2000, Mitchell was sentenced to five years of probation. On August 1, 2000, Andrada entered a conditional plea of guilty to Count 1 of the indictment, namely conspiracy, and was sentenced to 60 months imprisonment. On September 8, 2000, Sposato entered a conditional plea of guilty to Count 7 of the indictment, namely the unlawful use of a communication facility, and was sentenced to 33 months imprisonment.

By separate appeals, Mitchell, Sposato and Andrada now appeal the order of the district court denying their respective motions to suppress. Each appellant filed his own opening and reply brief, and the government, by order, was permitted to file one brief in answer to the three separate opening briefs. Each appellant is represented by his own counsel, each of whom presented oral argument on behalf of his client. Though we are here presented with three separate appeals, all will be treated in this order and judgment, since all basically

pose the question of whether the wiretap orders were obtained in accord with 18 U.S.C. § 2518.

Each of the three applications for a wiretap with which we are here concerned was presented to the Honorable John L. Kane, Jr., a United States District Judge for the District of Colorado. As stated, each was supported by an affidavit of Agent Guthrie.[1] The affidavit in support of the application for WT-5 is 74 pages in length. The affidavit supporting the application for WT-6 is 58 pages in length and the application for an extension order was 83 pages in length. Needless to say, there is considerable detail in each affidavit. The application for WT-5 sought an authorization to intercept wire communications of Mitchell, Sposato, Andrada, and others, some of whom were identified by name, and others whose names were unknown, to and from a telephone known to be used by David Gomez and subscribed in the name of Annette Trujillo, and two digital display paging devices subscribed in the name David Gomez. The application for WT-6 sought authorization to intercept wire communications of Mitchell, Sposato, Andrada, and others to and from a telephone utilized by and subscribed in the name Richard Andrada and the digital display paging devices subscribed to by

---

[1] It appears that the only evidentiary matters before the issuing judge were the three affidavits of Agent Guthrie. Accordingly, our determination of whether the district court erred in denying the motions to suppress is, as was the district court, limited to a consideration of these affidavits. See, e.g., *United States v. Mondragon,* 52 F.3d 291, 293-4 (10th Cir. 1995).

- 5 -

David Gomez. As stated, the third application sought an extension of WT-6.

The procedure for obtaining a court order authorizing the interception of wire communications is set forth in 18 U.S.C. § 2518. 18 U.S.C. § 2518(1)(c) provides that each application for a wiretap shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518 (3)(c) provides that a judge may enter an ex-parte order authorizing a wiretap if he determines on the basis of the facts submitted by the applicant for the wiretap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

We have held that the so-called "necessity requirement" as set forth in 18 U.S.C. §§ 2518(1)(c), (3)(c) is separate and distinct from the "probable cause" requirement set forth in 18 U.S.C. §§ 2518 (3)(a), (b), and that the "purpose of the necessity requirement is to ensure that the relatively intrusive device of wiretapping 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime'." *United States v. Castillo-Garcia,* 117 F.3d 1179, 1185 (10th Cir. 1997)(quoting *United States v. Edwards,* 69 F.3d 419, 429 (10th Cir. 1995)). In the instant case the district court, in denying appellants' motions to suppress, determined on the basis of Agent Guthrie's

affidavits, which the court analyzed in detail, that the requirements of 18 U.S.C. §§ 2518(1)(c), (3)(c) were "satisfied" as to all three wiretap applications.

On appeal, all three appellants challenge the district court's determination that Agent Guthrie's affidavits complied with 18 U.S.C. §§ 2518(1)(c), (3)(c). They argue, essentially, that the affidavits did not demonstrate "necessity," and that other less intrusive investigative techniques would have sufficed, and, indeed, that such had already been used, with considerable success. As concerns the "other investigative techniques," we spoke in *Castillo-Garcia* as follows:

> We now expressly hold what the court in *Mesa-Rincon* suggested and what seems clearly to be contemplated by Title III. To obtain an electronic surveillance order, the government must explain fully in its application what investigative techniques have been tried against the target of the wiretap. 18 U.S.C. §§ 2518(1)(c), 2518(3)(c) (1994). If any of the four categories of normal investigative techniques referred to in the legislative history of Title III have not been tried, the government must explain with particularity why each of such untried techniques would be either unsuccessful or too dangerous. Those investigative procedures are: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants. In addition, if other normal investigative techniques such as pen registers or trap and trace devices have not been tried, a similar explanation must be offered as to why they also would be unsuccessful or too dangerous. We add pen registers and trap and trace devices to this list because they possess a logical relationship and close affinity to

> wiretaps and yet are less intrusive.  Thus, unless the government can show that they would be ineffective or dangerous they must be tried before resorting to wiretaps.

*Id.* at 1187.

At the outset of our discussion, we emphasize that we are here only concerned with the "necessity requirement" of 18 U.S.C. § 2518.  We are here not concerned with "probable cause,"  "minimization," or any other requirement.  Our standard of review in an appeal from a denial, or a grant, of a motion to suppress, is set forth in *Castillo-Garcia,* as follows:

> On appeal from a motion to suppress evidence obtained pursuant to a wiretap, we accept the district court's factual findings unless clearly erroneous, review questions of law *de novo,* and view the evidence in the light most favorable to the prevailing party.   The question of whether the government demonstrated sufficient "necessity" under 18 U.S.C. § 2518(1)(c) (1994) to support the issuance of a wiretapping order is a question of law which we review *de novo.*  However, "a wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption."  Thus, under our precedents, the defendants continue to carry the burden of persuasion on the legal question of whether the Second through Fifth Wiretaps were "necessary," despite having prevailed below.  As discussed *supra* Part I, a wiretap is "necessary" only where "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

*Id.* at 1186 (citations omitted).

However, in this same connection, in *United States v. Armendariz,* 922 F.2d

602 (10th Cir. 1990), we said that the "necessity requirement" should be interpreted in a practical and common sense fashion, and described our standard of review on appeal as follows:

> We review the district court's finding of probable cause for a wiretap under the same standard used for a search warrant to determine whether the facts and circumstances within the officer's knowledge based on reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has or is being committed. "Although we examine de novo whether 'a full and complete statement' was submitted meeting section 2518(1)(c)'s requirements, we review the conclusion that the wiretap[ ] [was] necessary in each situation for an abuse of discretion."

*Id.* at 608 (citations omitted).

Proceeding then to the question of whether the affidavits of Agent Guthrie which were presented to the issuing judge (Judge Kane) were sufficient to meet the "necessity requirement" of 18 U.S.C. § 2518, we would again note that the target telephones in WT-5 were a telephone subscribed to by one Annette Trujillo and known to be used by David Gomez and paging devices subscribed in the name of David Gomez. The application sought an order authorizing the interception of telephone communications from Mitchell, Sposato, Andrada, and others, some named and still others unnamed, and the target telephones. In WT-6 the target telephones were a telephone utilized and subscribed in the name of Richard Andrada and paging devices used by and subscribed to by David Gomez. The

application sought an order authorizing the interception of telephone conversations from Mitchell, Sposato, Andrada, and others, some named and still others unnamed, and the target telephones. As indicated, the third application was for an extension of the WT-6 order. There was no application to intercept communications between telephones used or subscribed to by either Mitchell or Sposato, but, as stated, a telephone utilized and subscribed to by Andrada was a target telephone in WT-6.

Our reading of the three affidavits of Agent Guthrie convinces us that as to the targeted telephones, the "necessity requirement" of 18 U.S.C. § § 2518(1)(c), (3)(c) was satisfied.[2] We certainly would not be inclined to hold that any of the three appellants met their burden of overcoming the presumption that the authorization orders were proper. The district court fully analyzed all of the issues in its 26-page memorandum order and we are in general accord therewith. Further, the district court's order is also in accord with the rationale of such cases as *Castillo-Garcia*; *United States v. Killingsworth,* 117 F.3d 1159 (10th Cir. 1997) and our unpublished order and judgment, *United States v. Bovie,* 120 F.3d 271, 1997 U.S. App. LEXIS 27498 (10th Cir. July 29, 1997).

---

[2]We reach that conclusion whether our standard of review of the "necessity requirement" be *de novo*, as stated in *United States v. Castillo-Garcia*, 117 F.3d 1179, 1186 (10th Cir. 1997), or an abuse of discretion as stated in *United States v. Armendariz*, 922 F.3d 602, 608 (10th Cir. 1999). In this connection, see *United States v. Garcia*, 232 F.2d 1309, 1313 (10th Cir. 2000).

Appellants also argue that the government failed to show "necessity" as to each of them individually. 18 U.S.C. § 2518(1)(c) sets forth the so-called "necessity requirement." 18 U.S.C. § 2518(1)(b)(iv) requires that the application for a wiretap order contain "the identity of the person, if known, committing the offense and whose communications are to be intercepted." The argument is that 18 U.S.C. § 2518(1)(b)(iv) requires that the necessity requirement of 18 U.S.C. § 2518(1)(c) be shown as to all named interceptees. We do not agree with this argument. *See, e.g., United States v. Donovan*, 429 U.S. 413 (1976). In *Donovan*, the Supreme Court held that Congress did not intend that 18 U.S.C. §2518(1)(b)(iv) play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *Donovan*, 429 U.S. at 437 (quoting *United States v. Chavez*, 416 U.S. 562, 578 (1974)). *See also United States v. Barrios,* 994 F.Supp. 1257, 1262-66 (D.Colo 1993).

Judgment affirmed.